95 F.3d 1392
 36 Collier Bankr.Cas.2d 1297, 29 Bankr.Ct.Dec. 956,
Bankr. L. Rep. P 77,075,
96 Cal. Daily Op. Serv. 6775,
96 Daily Journal D.A.R. 11,095
 NEWBERY CORPORATION; Newbery Electric, Inc.,
Plaintiffs-Counter-Defendants-Appellants,
and
Citibank (Arizona), Plaintiff-Intervenor-Appellant,
v.
FIREMAN'S FUND INSURANCE COMPANY; The American Insurance
Company; National Surety Corp.; Associated Indemnity
Corporation; American Automobile Insurance Co.,
Defendants-Counter-Claimants-Appellees.
NEWBERY CORPORATION; Newbery Electric, Inc., Plaintiffs-Appellees,
v.
FIREMAN'S FUND INSURANCE COMPANY; The American Insurance
Company; National Surety Corp.; Associated
Indemnity Corporation; American
Automobile Insurance Co.,
Defendants-Appellants.
 Nos. 94-16806, 95-15336.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Feb. 13, 1996.
Decided Sept. 11, 1996.
 
 Douglas A. Bartman, Law Offices of Malcolm A. Misuraca, San Francisco, CA, for plaintiffs-appellants.
 Rob Charles and John P. Frank, Lewis and Roca LLP, Tucson, AZ, for plaintiff-intervenor-appellant.
 Curtis A. Jennings, Jay M. Mann and Robert J. Berens, Jennings & Haug, Phoenix, AZ, for defendants-appellees.
 Appeal from the United States District Court for the District of Arizona, Samuel Conti, District Judge, Presiding. D.C. No. CV-89-00288-SC.
 Before KOZINSKI, THOMPSON, and O'SCANNLAIN, Circuit Judges.
 OPINION
 O'SCANNLAIN, Circuit Judge:
 
 
 1
 We examine the application of the doctrine of recoupment in a breach of contract action brought by the debtor in a bankruptcy proceeding.
 
 
 2
 * In early 1987, Newbery Electric, Inc. was a large electrical subcontractor with numerous projects pending.[1] For a number of those projects, including the one at issue in the present appeal, Newbery obtained performance and payment bonds from its surety Fireman's Fund. The bonds guaranteed that Newbery's work would be completed and its employees and suppliers paid. In exchange, Newbery entered into a "General Indemnity Agreement," by which it promised to indemnify Fireman's Fund against all losses which Fireman's Fund might sustain because of claims on the bonds.
 
 
 3
 On or about June 2, 1987, Newbery abandoned all of the projects which Fireman's Fund had bonded and defaulted on the bonds. On June 4, 1987, Newbery, its primary lender Citibank (Arizona),[2] and Fireman's Fund entered an agreement (the "June 4, 1987 Agreement"). Pursuant to that agreement, Newbery transferred its bonded projects to Fireman's Fund and allowed Fireman's Fund to use Newbery's equipment to complete the projects. Fireman's Fund promised to pay rent for its use to Citibank, which owned a perfected security interest in Newbery's equipment. Recital B of the June 4, 1987 Agreement specifically incorporated by reference the General Indemnity Agreement between Newbery and Fireman's Fund.
 
 
 4
 In accordance with its bond obligations, Fireman's Fund hired a subcontractor, Electric Service and Supply Company ("ESSCO"), and completed Newbery's subcontract.[3] ESSCO used Newbery's equipment, and Fireman's Fund thus incurred an obligation to Citibank for equipment rent. Fireman's Fund failed to pay the rent as promised, resulting in the present suit.
 
 
 5
 Within a week after the June 4, 1987 Agreement was signed, Newbery filed Chapter 11 reorganization petitions in bankruptcy court in Arizona. While the bankruptcy proceeding was pending, Newbery filed a multi-million dollar lender liability claim against Citibank. In resolution of that suit, Newbery and Citibank entered a settlement agreement in February 1989 (the "Settlement Agreement"). Under the Settlement Agreement, Newbery released Citibank from its lender liability claim, and Citibank in turn advanced $1.25 million to Newbery. The loan was nonrecourse, to be repaid only from certain "Pooled Assets" which were to be distributed to Newbery and Citibank in accordance with an agreed sharing formula. The Pooled Assets included, inter alia, the claim to the equipment rentals owed by Fireman's Fund to Citibank under the June 4, 1987 Agreement. Under paragraph 8(c) of the Settlement Agreement, Citibank specifically assigned its rights to the equipment rental claim against Fireman's Fund to Newbery "as a Pooled Asset." Citibank also released its security interest in Newbery's equipment, and Newbery granted Citibank a new security interest in the Pooled Assets (to collateralize Newbery's new nonrecourse debt to Citibank). Citibank subsequently perfected its interest by filing in Arizona. Finally, in May 1989 Citibank executed a separate assignment document (the "Assignment"), expressly assigning to Newbery all of Citibank's right, title and interest to the equipment rentals.[4]
 
 
 6
 In 1989, after Fireman's Fund failed to pay the promised equipment rent, Newbery filed the present action.[5] Newbery also sued ESSCO, Fireman's Fund's completion contractor, in quantum meruit. ESSCO's motion for summary judgment was granted, and ESSCO was dismissed from the case. In June 1990 Fireman's Fund moved for summary judgment on its defenses of recoupment and setoff, and Newbery filed a cross-motion for summary judgment on the same issues.[6] On January 21, 1992, Judge Broomfield issued an order (the "1992 Order") which, among other things, (1) granted Fireman's Fund's motion for summary judgment on its defense of recoupment; (2) granted partial summary judgment to Fireman's Fund on its alternative defense of setoff; and (3) denied Newbery's cross-motion. In June 1992, Newbery and Citibank filed a motion for reconsideration of the 1992 Order. The district court denied that motion in January 1993. The court also denied Newbery's and Citibank's request to reform their Settlement Agreement.[7]
 
 
 7
 In March 1993 the district court certified an interlocutory appeal of its orders under 28 U.S.C. § 1292(b). The parties and court apparently sought to obtain an appellate ruling which would control numerous other similar cases which are presently pending between the same parties. This court dismissed the interlocutory appeal as premature. Newbery Corp. v. Fireman's Fund Ins., No. 93-80155 (9th Cir. May 17, 1993). The district court then decided to try the instant case to a jury as a test case for Fireman's Fund's recoupment and setoff defenses.
 
 
 8
 In June 1994 a jury trial was held solely on the issue of the amount of rents due under Newbery's breach of contract action. The jury awarded rents in the amount of $17,455. Based on its previous rulings on Fireman's Fund's recoupment and setoff defenses, the court ordered that Newbery and Citibank take nothing, and it entered judgment in favor of Fireman's Fund. Citibank and Newbery timely appealed.
 
 
 9
 Following the jury trial, Fireman's Fund filed a motion for attorneys' fees and expenses, arguing that it was the "successful party" and was thus entitled to such fees under Arizona law. The court denied the motion, and Fireman Fund timely appealed. The two appeals were consolidated and are presently before us.
 
 II
 
 10
 We first consider Newbery's and Citibank's argument that the district court erred in granting summary judgment on Fireman's Fund's recoupment defense. Of course, we review a grant of summary judgment de novo. Fosson v. Palace (Waterland), Ltd., 78 F.3d 1448, 1452 (9th Cir.1996). We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. Id. We may affirm on any ground fairly supported by the record. Id.
 
 
 11
 * Both Newbery and Citibank first argue that the district court should not have applied the recoupment doctrine in this case because recoupment allegedly conflicts with the bankruptcy principle of ratable distribution of assets among creditors. In support, they cite Quittner v. Los Angeles Steel Casting Co., 202 F.2d 814 (9th Cir.1953). For a number of reasons, we disagree. First, the Supreme Court has implicitly rejected the portion of Quittner upon which Newbery and Citibank rely. Second, the weight of modern authority suggests that recoupment clearly does not violate the bankruptcy principle to which they refer. Explanation requires a brief review of the doctrines of setoff and recoupment and of the rationales for the dissimilar application of those doctrines in the bankruptcy context.
 
 
 12
 "The right of setoff (also called 'offset') allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding 'the absurdity of making A pay B when B owes A.' " Citizens Bank of Maryland v. Strumpf, --- U.S. ----, ----, 116 S.Ct. 286, 289, 133 L.Ed.2d 258 (1995) (citation omitted). The defining characteristic of setoff is that "the mutual debt and claim ... are generally those arising from different transactions." 4 Collier on Bankruptcy p 553.03, at 553-14 (15th ed. 1995) ("Collier ").
 
 
 13
 Setoff in bankruptcy cases is governed by 11 U.S.C. § 553.[8] It has been used by creditors "as a defense in an action by the trustee for the recovery of money from the creditor." Collier p 553.01, at 553-7. Section 553 "is not an independent source of law governing setoff; it is generally understood as a legislative attempt to preserve the common-law right of setoff arising out of non-bankruptcy law." United States v. Arkison (In re Cascade Roads, Inc.), 34 F.3d 756, 763 (9th Cir.1994) (quoting United States v. Norton, 717 F.2d 767, 772 (3d Cir.1983)). Under section 553(a), each debt or claim sought to be offset must have arisen prior to filing of the bankruptcy petition. In addition, "a claim may ... be set off without regard to whether it is contingent or unliquidated, as long as the claim qualifies as 'mutual' under applicable nonbankruptcy law...." Collier p 553.01, at 553-6 (citation omitted).[9] In order for countervailing debts to be "mutual," they must be "in the same right and between the same parties, standing in the same capacity." Collier p 553.04, at 553-22 (citing England v. Industrial Comm. of Utah (In re Visiting Home Services, Inc.), 643 F.2d 1356, 1360 (9th Cir.1981)). The mutuality requirement stems from section 553(a)'s reference to "a mutual debt" owed by a creditor to the debtor against the creditor's claim against the debtor,[10] and it is strictly construed. Collier p 553.04, at 553-20. The rationale for strict construction of the requirement has been explained as follows:
 
 
 14
 [T]he mutuality requirement in bankruptcy should be strictly construed because setoffs run contrary to fundamental bankruptcy policies such as the equal treatment of creditors and the preservation of a reorganizing debtor's assets: As Congress recognized, setoffs work against both the goal of orderly reorganization and the fairness principle because they preserve serendipitous advantages accruing to creditors who happen to hold mutual obligations, thus disfavoring other equally-deserving creditors and interrupting the debtor's cash flow.
 
 
 15
 Federal National Mortgage Assoc. v. County of Orange (In re County of Orange), 183 B.R. 609, 615 (Bankr.C.D.Cal.1995) (internal quotation marks and citation omitted).
 
 
 16
 The right of setoff is permissive, not mandatory; its application "rests in the discretion of [the] court, which exercises such discretion under the general principles of [equity]." In re Cascade Roads, 34 F.3d at 763 (internal quotation marks and citation omitted); Collier p 553.02, at 533-13 (citation omitted). "The burden of proving an enforceable right of setoff rests with the party asserting the right." In re County of Orange, 183 B.R. at 615. Finally, the right of setoff is subject to the automatic stay provisions of Chapter 11. See 11 U.S.C. § 362(a)(7) (staying "the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor").
 
 
 17
 In contrast to setoff, recoupment "is the setting up of a demand arising from the same transaction as the plaintiff's claim or cause of action, strictly for the purpose of abatement or reduction of such claim." Collier p 553.03, at 553-15 (emphasis in original). Under recoupment, a defendant is able to meet a plaintiff's claim "with a countervailing claim that arose 'out of the same transaction.' " Ashland Petroleum Co. v. Appel (In re B & L Oil Co.), 782 F.2d 155, 157 (10th Cir.1986) (citations omitted). For this reason, recoupment has been analogized to both compulsory counterclaims and affirmative defenses. See, e.g., In re California Canners and Growers, 62 B.R. 18, 22 (9th Cir. BAP 1986) (Elliott, Bankruptcy J., concurring) (citation omitted).
 
 
 18
 Recoupment, like setoff, has been applied in bankruptcy proceedings. See, e.g., In re B & L Oil Co., 782 F.2d at 157. However, there are distinctions between the two that are particularly important in bankruptcy. Id. Collier explains that the primary difference is that the limits placed on setoff under section 553 generally do not apply to recoupment claims. Collier states, for example, that "[t]he chief importance of the recoupment doctrine in bankruptcy is that, unlike setoff, recoupment is often thought not to be subject to the automatic stay." Collier p 553.03, at 553-15--553-16 n. 5 (citations omitted). In addition, "[i]nvocation of recoupment also relaxes the requirement of mutuality for setoff of debts as it relates to the pre or postpetition character of those debts." Id. Collier offers the following rationale for this general rule:[I]n any suit or action between the estate and another, the defendant should be entitled to show that because of matters arising out of the transaction sued on, he or she is not liable in full for the plaintiff's claim. There is no element of preference here or of an independent claim to be set off, but merely an arrival at a just and proper liability on the main issue, and this would seem permissible without any reference to ... section 553(a).
 
 
 19
 Collier p 553.03, at 553-17 (citing Quittner, 202 F.2d at 816 n. 3). The Tenth Circuit has offered a similar rationale for treating setoff and recoupment differently in bankruptcy cases:
 
 
 20
 In bankruptcy, both recoupment and setoff are sometimes invoked as exceptions to the rule that all unsecured creditors of a bankrupt stand on equal footing for satisfaction. Recoupment or setoff sometimes allows particular creditors preference over others. Setoff is allowed in only very narrow circumstances in bankruptcy. But a creditor properly invoking the recoupment doctrine can receive preferred treatment even though setoff would not be permitted. A stated justification for this is that when the creditor's claim arises from the same transaction as the debtor's claim, it is essentially a defense to the debtor's claim against the creditor rather than a mutual obligation, and application of the limitations on setoff in bankruptcy would be inequitable.
 
 
 21
 In re B & L Oil Co., 782 F.2d at 157 (internal quotation marks and citations omitted) (cited in Collier p 553.03, at 553-15--553-16 n. 5); see also Lee v. Schweiker, 739 F.2d 870, 875 (3rd Cir.1984); In re Harmon, 188 B.R. 421, 425 (9th Cir. BAP 1995) ("[T]he invocation of the recoupment doctrine promotes no preference problem. It is applied when there are countervailing claims arising from the same transaction 'strictly for the purpose of abatement or reduction ....' ") (internal quotation marks and citation omitted); Photo Mechanical Services, Inc. v. E.I. DuPont De Nemours & Co., Inc. (In re Photo Mechanical Services, Inc.), 179 B.R. 604, 612 (Bankr.D.Minn.1995).
 
 
 22
 It is true, as Newbery points out, that the rationales offered in the above authorities conflict with our holding in Quittner. In Quittner, we refused to allow a defendant to recoup prepayments made by that defendant to the plaintiff-debtor, finding that application of recoupment in the bankruptcy context "would interfere with the ratable distribution of assets among the general creditors." Quittner, 202 F.2d at 816; see also In re California Canners and Growers, 62 B.R. at 22-23 (Elliott, Bankruptcy J., concurring) (discussing Quittner ). However, in a recent case, the Supreme Court adopted a view which is consistent with the above authorities and inconsistent with Quittner. In Reiter v. Cooper, 507 U.S. 258, 113 S.Ct. 1213, 122 L.Ed.2d 604 (1993), the Court stated that
 
 
 23
 [i]t is well settled, moreover, that a bankruptcy defendant can meet a plaintiff-debtor's claim with a counterclaim arising out of the same transaction, at least to the extent that the defendant merely seeks recoupment. Recoupment permits a determination of the just and proper liability on the main issue, and involves no element of preference.
 
 
 24
 Id. at 265 n. 2, 113 S.Ct. at 1218 n. 2 (citing In re B & L Oil Co. and Lee and quoting Collier ) (internal quotation marks omitted). To the extent that Quittner stands for a contrary rule, it has been overruled.
 
 
 25
 Accordingly, we reject both Newbery's and Citibank's argument and hold that recoupment does not violate the bankruptcy principle of ratable distribution of assets among a bankrupt debtor's creditors.[11]
 
 B
 
 26
 Newbery and Citibank next argue that the district court erred because recoupment is available only in cases involving overpayments on the part of the party seeking to recoup. In support of this purported rule, the appellants refer us to a number of cases involving overpayments in which recoupment has been allowed. However, Fireman's Fund has pointed us to a number of cases explicitly holding that recoupment is not limited to such cases. See, e.g., Burley v. American Gas & Oil Investors (In re Heafitz), 85 B.R. 274, 279 (Bankr.S.D.N.Y.1988) (citing Rakozy v. Reiman Constr. (In re Clowards, Inc.), 42 B.R. 627 (Bankr.D.Idaho 1984)). More importantly, the appellants have failed to outline any rationale which would justify limiting recoupment to such cases, and we can find none.
 
 
 27
 As noted above, recoupment is an equitable doctrine which is based on the premise that "the defendant should be entitled to show that because of matters arising out of the transaction sued on, he or she is not liable in full for the plaintiff's claim." Collier p 553.03, at 553-17 (citation omitted). There are, of course, any number of reasons why a defendant may not in fact be liable in full for a plaintiff's claim. In the cases cited by the appellants, the defendant had made certain payments to the debtor, and recoupment was allowed because it would be inequitable not to allow the defendant to recoup those payments against the debtor's subsequent claim. A similar rationale exists in the present case. Newbery is contractually obligated to indemnify Fireman's Fund for all losses incurred by Fireman's Fund as a result of Newbery's default on Fireman's Fund performance and payment bonds. Fireman's Fund's obligation to pay rent for the use of Newbery's equipment stemmed directly from Newbery's default on those bonds. Accordingly, Newbery is seeking recovery from Fireman's Fund for payment of equipment rent even though Fireman's Fund's obligation to pay that rent stemmed directly from Newbery's default on Fireman's Fund's bonds, and even though Newbery is obligated to indemnify Fireman's Fund for consequential losses attributable to Newbery's default on those bonds. Application of the recoupment doctrine in such circumstances is entirely equitable, and it is consistent with the rationales for that doctrine. Accordingly, we reject the argument that recoupment is only available in cases involving overpayments.
 
 C
 
 28
 Newbery and Citibank next assert that Fireman's Fund is not entitled to assert the recoupment defense because between 1987 and 1989 Fireman's Fund allegedly failed to pay rents to Citibank in a deliberate attempt to create a fund against which Newbery's indemnity obligation could later be recouped. Newbery and Citibank cite Matter of American Sunlake Ltd. Partnership, 109 B.R. 727, 731 (Bankr.W.D.Mich.1989) in support of the proposition that "[r]ecoupment [should be] denied where a creditor acts inequitably in the effort to bootstrap a recoupment," and that "[a] creditor has no claim in equity when it manufactures the claim it seeks as an offset."
 
 
 29
 We reject this argument for two reasons. First, the district court concluded that the appellants had failed to provide any specific evidence to justify a finding of bad faith. On appeal, the appellants have failed to offer a persuasive explanation of why the court's conclusion is erroneous. Second, Fireman's Fund notes that it could not have withheld the rent prior to 1989 as part of a scheme to assert a recoupment or setoff defense later, because its obligation to pay rent up until May 1989 was to Citibank, not Newbery, and it could not have anticipated Citibank's later assignment of its right to the rental claim back to Newbery. As such, cases such as Paris v. Transamerica Insurance Group (In re Buckley & Assoc. Ins., Inc.), 78 B.R. 155, 157-58 (E.D.Tenn.1987) ("A creditor may not ignore its current obligation to pay a debtor in anticipation of setting it off against some later debt."), are inapposite.
 
 D
 
 30
 Newbery and Citibank next argue that the district court erred in concluding that Newbery's claim to the equipment rentals and Fireman's Fund's claim for indemnification stemmed from the "same transaction." We are not persuaded.
 
 
 31
 In deciding whether the relevant claims arose from the same transaction, the district court applied the "logical relationship" test outlined by the Supreme Court in Moore v. New York Cotton Exchange, 270 U.S. 593, 46 S.Ct. 367, 70 L.Ed. 750 (1926). In Moore, the Court stated that " '[t]ransaction' is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." Id., 270 U.S. at 610, 46 S.Ct. at 371; see also Albright v. Gates, 362 F.2d 928, 929 (9th Cir.1966) ("In deciding what is a transaction, we take note that the term gets an increasingly liberal construction."). Applying this test, the district court accepted Fireman's Fund's argument that, because of the incorporation of the General Indemnity Agreement into the June 4, 1987 Agreement, both claims arose from the latter agreement.
 
 
 32
 The district court's decision is supported by Arizona contract law. As the Arizona Supreme Court has explained,
 
 
 33
 [m]atters contained in other writings which are referred to are to be regarded as part of the contract and properly to be considered in the interpretation of the contract.... [I]t has long been settled, without a dissenting voice, that parties may incorporate into agreements by mere reference, other writings or agreements or records, and thereby make the latter an essential part of the contract.
 
 
 34
 Climate Control, Inc. v. Hill, 86 Ariz. 180, 342 P.2d 854, 859 (1959) (emphasis added), modified on reh'g on other grounds, 87 Ariz. 201, 349 P.2d 771, appeal dismissed, 364 U.S. 409, 81 S.Ct. 180, 5 L.Ed.2d 185 (1960). Accordingly, under Arizona law the incorporation of the General Indemnity Agreement into the June 4, 1987 agreement made the former "an essential part" of the latter contract, and the countervailing claims thus each arose from that contract.
 
 
 35
 Newbery and Citibank argue that the actual General Indemnity Agreement between Newbery and Fireman's Fund was not incorporated into the June 4, 1987 Agreement, and that the only thing which was incorporated was a "specimen of an indemnity agreement--not the actual indemnity agreements signed by Newbery." This argument is unpersuasive in light of other more concrete references in the June 4, 1987 Agreement to the General Indemnity Agreement. For example, as the district court noted, paragraph E of the recitals to the June 4, 1987 Agreement states that "Newbery is in default ... and desires pursuant to the terms of the General Indemnity Agreements to assist [Fireman's Fund] in performing its obligations under its bonds and to minimize losses on said bonded projects." In addition, paragraph 4 of the main text states that "[e]xcept as otherwise explicitly set forth herein, nothing contained in this Agreement shall be construed as a waiver by [Fireman's] Fund of any rights it has or may have in the future under its General Indemnity Agreement." We agree with the district court that the parties clearly incorporated the specific Newbery/Fireman's Fund indemnity agreement, rather than merely a generic "specimen," into the June 4, 1987 Agreement.
 
 
 36
 Newbery also relies on University Medical Center v. Sullivan (In re University Medical Center), 973 F.2d 1065 (3rd Cir.1992), in support of its assertion that the debts did not stem from a single transaction. However, University Medical Center is factually and legally distinguishable. In University Medical Center, a debtor Medicare provider that owed reimbursements under prepetition transactions continued to provide Medicare services under its original provider agreement after its bankruptcy petition was filed. The court stated that the fact that certain 1985 and 1988 payments were made pursuant to the same basic provider agreement did not mean that the payments all constituted a single, integrated transaction; instead, the court pointed out that each transaction was subject to individual accounting. The court emphasized that "[t]he 1988 payments were independently determinable and were due for services completely distinct from those reimbursed through the 1985 payments." University Medical Center, 973 F.2d at 1081. In addition, the court noted that "[u]nlike the payment arrangement established by a provider agreement, the typical situation in which equitable recoupment can be invoked involves a credit and debt arising out of a transaction for the same goods or services." Id. (emphasis added). As Fireman's Fund points out, in the instant case "Newbery's claim ... arose from the very same acts as gave rise to creditor Fireman's Fund's claim against Newbery (use of equipment at the Los Alamitos Project). In other words, there is a logical relationship and intertwining of opposing claims in the instant case that was lacking in [University Medical Center ]." We agree.
 
 
 37
 In addition, we note that in University Medical Center the Third Circuit applied a more narrow definition of the phrase "same transaction" than was applied by the district court in the present case. The court explained its reasons for doing so as follows:
 
 
 38
 We find that the open-ended standard, endorsed in the context of discerning compulsory counterclaims, is inadequate for determining whether two claims arise from the same transaction for the purposes of equitable recoupment in bankruptcy. Indeed, in [Lee v. Schweiker, 739 F.2d 870, 875 (3rd Cir.1984) ] we stressed that both setoff and recoupment play very different roles in bankruptcy than in their original roles as rules of pleading. Lee, 739 F.2d at 875. For the purposes of recoupment, a mere logical relationship is not enough: The fact that the same two parties are involved, and that a similar subject matter gave rise to both claims ... does not mean that the two arose from the "same transaction." Rather, both debts must arise out of a single integrated transaction so that it would not be inequitable for the debtor to enjoy the benefits of that transaction without meeting its obligations. Use of this stricter standard for delineating the bounds of a transaction in the context of recoupment is in accord with the principle that this doctrine, as a non-statutory, equitable exception to the automatic stay, should be narrowly construed.
 
 
 39
 Id. at 1081 (internal quotation marks and citation omitted).
 
 
 40
 In our view, the district court in the present case did not err by applying Moore 's "logical relationship" test. However, we agree with the Third Circuit's observation that courts should apply the recoupment doctrine in bankruptcy cases only when "it would ... be inequitable for the debtor to enjoy the benefits of that transaction without meeting its obligations." University Medical Center, 973 F.2d at 1081. For the reasons stated above, we conclude that this standard is clearly met in the facts of this case.
 
 
 41
 Accordingly, we affirm the district court's finding that the countervailing claims at issue in this case arose from the same transaction.
 
 E
 
 42
 Finally, Newbery and Citibank assert that even if all the requirements for recoupment are otherwise met, application of the doctrine in this case would impermissibly impair Citibank's perfected security interest in the Pooled Assets. We disagree.
 
 
 43
 Newbery and Citibank claim that "[r]ecoupment cannot be used when there is an intervening prior or superior right in the fund that a creditor seeks not to pay." In support of this proposition, they cite Native Am. Fin. Inc. v. Tecumseh Constr. Co. (In re Tecumseh Constr. Co.), 157 B.R. 471 (Bankr.E.D.Cal.1993). In Tecumseh, the court did unequivocally state that "recoupment cannot defeat the rights of a creditor who holds a properly perfected Article 9 security interest." Id. at 472. However, we conclude that application of recoupment on the facts of this case would not "defeat" Citibank's rights.[12]
 
 
 44
 As noted above, the purpose of the recoupment doctrine is merely to arrive at a just determination of the proper amount of a plaintiff's claim. Accordingly, when a third party has a security interest in that very claim, application of the recoupment doctrine does not impair the security interest, but merely serves to determine the value of the claim in which the third party holds its interest. In this case, Citibank's security interest in the Pooled Assets is in reality merely a right to a portion of the unspecified proceeds of Newbery's claim against Fireman's Fund. Because recoupment is designed merely to arrive at a proper calculation of the value of that claim, Citibank has little grounds to object to the application of the recoupment doctrine, even if application of that doctrine ultimately results in a determination that the property in which Citibank has a security interest is worthless. Accordingly, we reject Citibank's argument that application of recoupment here would impermissibly impair its security interest in the Pooled Assets.
 
 F
 
 45
 For the foregoing reasons, we hold that the district court did not err in granting summary judgment to Fireman's Fund on its recoupment defense. In light of our ruling on this issue, we need not, and do not, consider whether the court erred in granting partial summary judgment on the alternative defense of setoff.
 
 III
 
 46
 Newbery next argues that the district court erred in granting summary judgment to Fireman's Fund on Newbery's claim for account stated. Newbery's argument is without merit.
 
 
 47
 Under Arizona law, an account stated occurs when persons with an open and running business account mutually agree to settle and strike a balance. Ralston v. Morgan, 50 Ariz. 504, 73 P.2d 94, 95 (1937). Proof of an agreement as to the amount owed between the parties is an "absolute requisite to the legal concept of account stated." Holt v. Western Farm Services, Inc., 110 Ariz. 276, 517 P.2d 1272, 1274 (1974) (citation omitted). An agreement to settle may be express; however, in some circumstances such an agreement may be implied from the rendering of a statement and a failure to object to that statement within a reasonable time. Trimble Cattle Co. v. Henry & Horne, 122 Ariz. 44, 592 P.2d 1311, 1314-15 (App.1979).
 
 
 48
 Newbery argues that an implied agreement to settle arose between Newbery and Fireman's Fund because Fireman's Fund allegedly failed to object to monthly rental equipment invoices sent by Newbery. The district court correctly rejected this argument. First, the parties never agreed to a sum certain amount due for rental of Newbery's equipment; to the contrary, the evidence indicates that the parties never resolved their dispute on this issue. Among other things, Fireman's Fund points to the deposition of Eric M. Rumple, a Citibank Vice President, who testified that during settlement discussions with Citibank in the latter part of 1988 and early part of 1989, Fireman's Fund acknowledged an obligation to pay rent, but questioned the amount of liability. Second, Newbery concedes that Fireman's Fund generally objected to the invoices. Newbery's argument that Fireman's Fund should have objected more strenuously misses the mark, because the existence of a dispute precludes the finding of an account stated under Arizona law. Third, as Fireman's Fund correctly notes, Arizona law requires that an account stated be based on final accountings, as opposed to monthly or interim invoices. Holt, 517 P.2d at 1274. In this case, each of the invoices contained the following statement: "SPECIAL NOTE: THIS BILLING IS NOT NECESSARILY COMPLETE. THERE MAY BE A FUTURE BILLING ON ADDITIONAL ITEMS." This language precludes a finding that the invoices represented final statements.
 
 
 49
 The district court did not err.
 
 IV
 
 50
 Newbery also appeals the district court's order granting summary judgment against Newbery in its suit against ESSCO (Fireman's Fund's completion contractor) for quantum meruit.[13]
 
 
 51
 Quantum meruit "describes the extent of liability on a contract implied by law." Black's Law Dictionary 1119 (West 5th ed. 1979). It "rests upon the equitable theory that a contract to pay for services rendered is implied by law for reasons of justice." Hedging Concepts, Inc. v. First Alliance Mortgage Co., 41 Cal.App.4th 1410, 49 Cal.Rptr.2d 191, 197 (2 Dist.1996).
 
 
 52
 The district court concluded that Newbery's quantum meruit suit against ESSCO, which essentially sought to recover the equipment rent owed by Fireman's Fund to Newbery, was an attempt by Newbery to recover the rent without actually having to proceed against Fireman's Fund on the basis of Newbery's contract with Fireman's Fund. Because an express contract existed between Fireman's Fund and Newbery which covered the subject matter of this suit, the district court granted summary judgment against Newbery. The court's decision was based on the general rule that a party to an enforceable contract may not seek recovery for a contract breach by resort to extra-contractual theories such as quantum meruit. See, e.g., Hedging, 49 Cal.Rptr.2d at 197 ("it is well settled that there is no equitable basis for an implied-in-law promise to pay reasonable value when the parties have an actual agreement covering compensation"); Wal-Noon Corp. v. Hill, 45 Cal.App.3d 605, 119 Cal.Rptr. 646, 650-51 (3 Dist.1975); Crossen v. Foremost-McKesson, Inc., 537 F.Supp. 1076, 1077 (N.D.Cal.1982) (applying California law). In light of these authorities, we agree with the district court that Newbery may only seek recovery of the equipment rents by proceeding against Fireman's Fund on the basis of the express contractual provisions.
 
 
 53
 On appeal, Newbery argues primarily that ESSCO, not Fireman's Fund, is liable for the rent, and that Fireman's Fund is acting as a surety for ESSCO. Newbery's argument simply lacks foundation in the record. Under the relevant contract provisions, it is Fireman's Fund, not ESSCO, which is liable for the rent payments.
 
 
 54
 Newbery also argues that in John A. Artukovich & Sons, Inc. v. Reliance Truck Co., 126 Ariz. 246, 614 P.2d 327 (1980), the Arizona Supreme Court "acknowledged ... that a third party could be sued on quantum meruit ... despite the existence of an express contract with another party." As the district court correctly noted, Newbery's reliance on Artukovich is misplaced.[14] In Artukovich, the plaintiff had leased a crane to a building contractor. The contractor had in turn hired the defendant to transport the crane. Before the crane was moved, the defendant used the crane for his own personal benefit. Because the contract between the plaintiff and the contractor did not cover the defendant's use of the crane for his own personal benefit, the express contract did not cover the subject matter of the lawsuit. The court accordingly allowed the plaintiff to seek recovery on the basis of quantum meruit. Artukovich is thus clearly distinguishable from the present case.
 
 
 55
 Accordingly, we affirm the district court's grant of summary judgment against Newbery on its quantum meruit claim.
 
 V
 
 56
 In the consolidated appeal, Fireman's Fund appeals the district court's denial of its motion for attorneys' fees. Fireman's Fund sought an award of attorneys' fees and nontaxable expenses as the "successful party" under Arizona Revised Statutes § 12-341.01(A) ("In any contested action arising out of a contract, express or implied, the court may award the successful party reasonable attorneys' fees."). Judge Conti held that Fireman's Fund was "the successful party," but declined to award fees. We conclude that Judge Conti did not abuse his discretion in denying the fees.[15]
 
 
 57
 The Arizona Supreme Court has outlined six factors which courts should use in determining whether to grant attorneys' fees and costs. Those factors are (1) whether the unsuccessful party's claim or defense was meritorious; (2) whether the litigation could have been avoided or settled and the successful party's efforts were completely superfluous in achieving that result; (3) whether assessing fees against the unsuccessful party would cause an extreme hardship; (4) whether the successful party prevailed with respect to all the relief sought; (5) whether the legal question was novel and whether such claim or defense has previously been adjudicated in this jurisdiction; and (6) whether the award would discourage other parties with tenable claims or defenses from litigating or defending legitimate contract issues for fear of incurring liability for substantial amounts of attorneys' fees. Associated Indemnity Corp. v. Warner, 143 Ariz. 567, 694 P.2d 1181, 1184 (1985). Judge Conti correctly applied these factors.
 
 
 58
 First, Judge Conti found that Newbery's rent claim was meritorious, as indicated by the jury award in Newbery's favor. He also concluded that on "the confusing facts of this case," Newbery's belief that it would be entitled to a rent award which would exceed Fireman's Funds offset defense was "not unreasonable." Second, on the basis of the joint efforts by the parties and the court to obtain an interlocutory ruling from this court on the relevant orders, he noted that both parties had tried to avoid having a trial. While Fireman's Fund vigorously argues that Newbery pressed for a trial knowing full well that it would be unable to succeed in light of Fireman's Fund's setoff defense, Fireman's Fund fails to refute Judge Conti's finding that Newbery was justified in seeking a trial because Fireman's Fund refused to stipulate to a rent award sufficiently high so as to give Newbery an opportunity to "raise an additional issue on appeal-whether Fireman's Fund may aggregate its offsets."
 
 
 59
 Third, Judge Conti noted that because Newbery is a bankrupt company, imposing "[a]nother $200,000 claim against it would certainly be an extreme hardship."[16] Fourth, he found that Fireman's Fund did not prevail with respect to all the relief sought, "because the jury award for rent owed was greater than the amount Fireman's Fund sought." Fifth, he noted that while "[t]he application of the recoupment and setoff defenses in the context of a bankruptcy is a novel legal issue," the issue at trial, namely the determination of the proper amount of rent, was not. He thus found that this factor favored neither side. Sixth and finally, he concluded that a fee award in this case might have a chilling effect on other debtors seeking to bring meritorious claims in similar circumstances.
 
 
 60
 It is clear that Judge Conti applied the proper factors, and that his conclusions are supported by the record. Accordingly, he did not abuse his discretion in denying the fee award.
 
 VI
 
 61
 For the foregoing reasons, we affirm the district court's judgment.
 
 
 62
 AFFIRMED.
 
 
 
 [1]
 Newbery Electric, Inc., its parent Newbery Corp., and various other related companies are collectively referred to as "Newbery."
 
 
 [2]
 The bank was then known as United Bank of Arizona
 
 
 [3]
 Fireman's Fund alleges that its bond losses stemming from this project exceeded $52,000, and that its losses for all of the bonded projects combined exceeded $25 million
 
 
 [4]
 As discussed below, it was this assignment to Newbery of Citibank's rights to the equipment rental claim which gave rise to Fireman's Fund's argument that, on the basis of Newbery's promise in the General Indemnity Agreement to indemnify Fireman's Fund from losses on its bonds, Fireman's Fund could assert a recoupment or setoff defense against Newbery's claim for rent
 
 
 [5]
 Newbery's Amended Complaint originally sought recovery for breach of contract, breach of the duty of good faith and fair dealing, conversion, and trespass to chattel. Pursuant to various pretrial motions filed by Fireman's Fund, all of Newbery's actions save its action for breach of contract were dismissed
 
 
 [6]
 After the motions were briefed, Citibank was permitted to intervene to assert its perfected security interest in the Pooled Assets, including the right to the equipment rental
 
 
 [7]
 Newbery and Citibank sought permission to reform the contract so that it could not be interpreted in a manner which would allow Fireman's Fund to assert the recoupment and setoff defenses. They argue that any such interpretation is inconsistent with their original intent in drafting the contract
 
 
 [8]
 "Except as otherwise provided ... this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case ... against a claim of such creditor against the debtor that arose before the commencement of the case...." 11 U.S.C. § 553(a)
 
 
 [9]
 Because the contracts in this case were executed in Arizona, the "applicable nonbankruptcy law" in this case is Arizona law. Arizona's definition of recoupment and setoff appears to parallel Collier 's:
 Although related concepts, set offs and counterclaims are distinguishable from recoupment. A set off or counterclaim is a demand which the defendant has against the plaintiff arising out of a transaction extrinsic to the plaintiff's cause of action, whereas a recoupment is a reduction by the defendant of part of the plaintiff's claim because of a right in the defendant arising out of the same transaction.
 Morris v. Achen Constr. Co., Inc., 155 Ariz. 507, 747 P.2d 1206, 1209 (App.1986) (citation omitted), rev'd in part on other grounds, 155 Ariz. 512, 747 P.2d 1211 (1987).
 
 
 [10]
 A "claim" includes a "right to payment," and a "debt" is a "liability on a claim." 11 U.S.C. § 101. "In the setoff context ... 'claim' and 'debt' are ... correlative terms." Collier p 553.04, at 553-19 n. 1 (citation omitted)
 
 
 [11]
 For similar reasons, we reject the appellants' related arguments that the mutuality requirements applicable in setoff cases should also apply in recoupment, and that Fireman's Fund's recoupment defense should fail because Fireman's Fund allegedly violated the automatic stay. As noted above, the requirements of section 553 simply do not apply in recoupment cases. See Quittner, 202 F.2d at 816 n. 3 ("Where the matter is one of recoupment or defense, a defendant need not rely upon [the setoff statute], because he would merely be proving that he is not liable in full for the plaintiff's claim.") (citation omitted); Collier p 553.03, at 553-17
 
 
 [12]
 In any event, Tecumseh would not be controlling as to Arizona law
 
 
 [13]
 The district court, applying Arizona choice-of-law rules, applied California substantive law on this issue. The parties have not challenged this decision
 
 
 [14]
 In light of the fact that Newbery does not challenge the district court's decision to apply California law on this issue, it is somewhat unclear why Newbery relies on this Arizona case
 
 
 [15]
 Because an award of attorneys' fees under A.R.S. § 12-341.01 is discretionary with the court, see Apollo Group, Inc. v. Avnet, Inc., 58 F.3d 477, 482 (9th Cir.1995) (citing Associated Indem. Corp. v. Warner, 143 Ariz. 567, 694 P.2d 1181, 1184 (1985)), we usually review an order denying such fees for an abuse of discretion. Cf. Haworth v. State of Nevada, 56 F.3d 1048, 1051 (9th Cir.1995). Fireman's Fund, citing Twentieth Century Fox Film Corp. v. Goldwyn, 328 F.2d 190, 221 (9th Cir.), cert. denied, 379 U.S. 880, 85 S.Ct. 143, 13 L.Ed.2d 87 (1964), urges us to apply a less deferential standard of review because Judge Conti "came into the case after most of the legal services had been rendered." We decline this invitation. In Twentieth Century Fox, the judge who had presided over the bench trial passed away before the case was submitted, and a different judge entered judgment on the basis of the record. In this case, Judge Conti presided over the entire trial, and it is clear from the record that he was intimately familiar with the case. We therefore apply our normal abuse of discretion standard
 
 
 [16]
 Judge Conti noted that this same conclusion would not apply to Citibank