[L.A. No. 31355. Apr. 23, 1981.]

MICHAEL BLEECHER et al., Plaintiffs and Respondents, v.
SIRPUHE PHILIBOSIAN CONTE, Defendant and Appellant.

COUNSEL

Katz, Hoyt & Bell, Charles J. Katz and Louis C. Hoyt for Defendant and Appellant.

Belcher, Henzie & Biegenzahn and William I. Chertok for Plaintiffs and Respondents.

OPINION

**BIRD, C. J.**—This case involves a land sale agreement with a liquidated damages clause which, upon the buyers' breach of contract, limited the

seller's remedy to possession of any plans or reports prepared at the buyers' request and expense. The court must decide: (1) whether the buyers' promise was illusory and, therefore, failed to bind the parties to the legal obligations of a valid contract; and (2) whether the buyers were entitled to specific performance even though the seller waived that remedy in the liquidated damages clause.

## I.

The plaintiff buyers are two real estate broker/developers and one real estate salesman. They seek specific performance of an agreement they made to purchase property for a condominium development. The defendant seller, Mrs. Sirpuhe Conte, is an experienced businesswoman involved in real estate transactions.[1]

In 1977, Mrs. Conte bought 40 acres of unimproved land in Palm Desert for $150,000. Approximately one year later, she gave Mr. Gregory Corarito, a licensed real estate salesman, written authorization to act as her agent in locating a buyer for this property. Mr. Corarito contacted potential buyers including another licensed real estate salesman, Mr. Michael Bleecher.

Mr. Bleecher joined with two associates (plaintiffs), Mr. Adeeb Sadd and Mr. George Nigro, contractors involved in real estate development. On September 17, 1978, they prepared a deposit receipt and agreement of purchase and sale form offering $575,000 for the 40 acres. The terms of the offer provided for a $1,000 deposit to open escrow, 29 percent to be paid at the close of escrow, with the remainder to be paid within 5 years.

Escrow was scheduled to close on the day after the final tract map was recorded. The buyers agreed to "do everything in their power to expedite the recordation of the final map and [to] proceed with diligence." The buyers' obligation to pay was contingent upon their approval of the title report, plat map, and soil, zoning and engineering reports. However, approval could not be unreasonably withheld. The offer form also included a liquidated damages clause limiting the seller's remedy to possession of the reports and plans created for the buyers.[2]

---

[1] The defendant testified at trial that she had negotiated the purchase and sale of other properties without an attorney's assistance. She indicated that she was familiar with both tract maps and permit requirements for subdivision and development of property.

[2] The liquidated damages clause stated: "[t]he parties consider it impracticable or extremely difficult to fix the actual damage in the event Buyer does not fulfill its

On September 18th, the seller rejected the offer and made a signed counteroffer. The counteroffer stated: "[a]ll of the terms and conditions of the aforementioned Agreement to purchase offer are hereby accepted and shall remain the same with the exception of the following: [¶] 1) Property to be sold for all cash. ($575,000) [¶] 2) Seller warrants that no less than one hundred and twenty residential units can be constructed on subject property." The defendant neither questioned nor discussed any other term of the original offer. The plaintiffs signed the counteroffer that same day.

On September 20th, the buyers made a $1,000 deposit into escrow. The terms of the deposit receipt and the agreement of purchase and sale, as well as the counteroffer, were incorporated in the escrow instructions. Mr. Bleecher, at Mrs. Conte's request, took these instructions to Mrs. Conte's tax attorney for his review.

A telephone conference call involving Mrs. Conte, her attorney, Mr. Bleecher and Mr. Corarito was held shortly thereafter. During this telephone conversation, Mrs. Conte refused to sign the escrow instructions or proceed with the agreement unless the buyers would pay the entire purchase price before the end of the calendar year. Since that was not part of the agreement, the buyers brought suit for specific performance.

At the trial, Mrs. Conte defended her actions by asserting that: (1) she had never agreed to an open-ended escrow; (2) the agreement was void because it imposed no legal obligation on the buyers; and (3) she could not be forced to specifically perform because of the nature of the liquidated damages clause. The presence in this clause of one party's waiver of the specific performance remedy precluded, she claimed, specific performance of the agreement for either party.

The trial court rejected her arguments and entered judgment for the plaintiffs. The court ordered Mrs. Conte to place the deed to the property in escrow and to sign the escrow instructions. Plaintiffs were ordered to proceed with diligence to obtain and record a tract map within a period of six months, unless the court modified its ruling. This appeal by the seller followed.

---

obligations hereunder; therefore, the parties agree that payment to Seller of the sum of all plans and reports as liquidated damages shall constitute Seller's sole remedy in the event of any material breach by Buyer hereunder, Seller hereby expressly waiving any and all right Seller may now or hereafter have to specific performance hereof."

## II.

The first issue to be decided is whether the agreement lacked mutuality of obligation and, therefore, was unenforceable. ■ A bilateral contract is one in which there are mutual promises given in consideration of each other. (See *Davis* v. *Jacoby* (1934) 1 Cal.2d 370, 378 [34 P.2d 1026]; Rest., Contracts, § 12.) The promises of each party must be legally binding in order for them to be deemed consideration for each other. (1 Witkin, Summary of Cal. Law (8th ed. 1973) pp. 32, 162.)

If a party is not assuming a legal duty in making a promise, the agreement is not binding as a bilateral contract. This court expressed the rule in *Mattei* v. *Hopper* (1958) 51 Cal.2d 119, at page 122 [330 P.2d 625]: "[w]hen the parties attempt . . . to make a contract where promises are exchanged as the consideration, the promises must be mutual in obligation. In other words, for the contract to bind either party, both must have assumed some legal obligations. Without this mutuality of obligation, the agreement lacks consideration and no enforceable contract has been created. [Citations.]" (See also Civ. Code, § 3391, subd. 1.)

There are two other well-established rules which are pertinent. ■ First, "[i]n every contract there is an implied covenant of good faith and fair dealing that neither party will do anything which injures the right of the other to receive the benefits of the agreement. [Citations.]" (*Brown* v. *Superior Court* (1949) 34 Cal.2d 559, 564 [212 P.2d 878]; see also *Redke* v. *Silvertrust* (1971) 6 Cal.3d 94, 100 [98 Cal.Rptr. 293, 490 P.2d 805], cert. den., 405 U.S. 1041 [31 L.Ed.2d 583, 92 S.Ct. 1316]; *Universal Sales Corp.* v. *Cal. etc. Mfg. Co.* (1942) 20 Cal.2d 751, 771 [128 P.2d 665]; *Masonite Corp.* v. *Pacific Gas & Electric Co.* (1976) 65 Cal.App.3d 1, 9 [135 Cal.Rptr. 170].) ■ Second, if a contract is capable of two constructions, the court must choose that interpretation which will make the contract legally binding if it can be so construed without violating the intention of the parties. (*Rodriguez* v. *Barnett* (1959) 52 Cal.2d 154, 160 [338 P.2d 907]; see also Civ. Code, §§ 1643, 3541.)

■ In the present case, the seller contends that the buyers' promise was illusory since they assumed no real obligations under the agreement. Therefore, she argues, the contract lacked mutuality of obligation and was unenforceable. She claims that the buyers could decline to

have a tract map prepared or to obtain city approval for development, renege on the agreement, and still get back their $1,000 escrow deposit. An additional argument is advanced that the contract is void because the seller's remedy under the liquidated damages clause is limited to those plans or reports which had been prepared by the buyers.

There is one fatal flaw in the seller's argument that this contract lacked mutuality of obligation. She overlooks the buyers' promise to "do everything in their power to expedite the recordation of the final map" and to "proceed with diligence."

The present contract would have no value to the buyers if they did not proceed in good faith and obtain the necessary reports and approvals. The buyers do not have an unfettered right to cancel their contract or ignore their contractual obligations. More importantly, the buyers expressly promised to diligently pursue their obligations and to refrain from withholding their approval unreasonably. (See also *Larwin-Southern California, Inc.* v. *JGB Investment Co.* (1979) 101 Cal.App.3d 626, 640 [162 Cal.Rptr. 52].) The citations to *Sturgis* v. *Galindo* (1881) 59 Cal. 28 and *Dabney* v. *Key* (1922) 57 Cal.App. 762 [207 P. 921] by the seller are not persuasive.

In *Sturgis*, the court denied enforcement of a land sale contract in which one party could withdraw at any time at its discretion upon 30 days' notice. In *Dabney*, the court denied specific performance to a lessee who could cancel a lease by surrendering it at any time for any reason while the lessor was bound to a term of years.[3]

The seller's reliance on *County of Alameda* v. *Ross* (1939) 32 Cal. App.2d 135 [89 P.2d 460] is similarly misplaced. In that case, the United States government and the Alameda County Board of Supervisors agreed that the county could use certain bridges for the convenience of public traffic. The county was obligated to make necessary repairs and to maintain the bridges. The agreement was explicitly revocable by the Secretary of War at any time for any reason. The court held that the lack of any "good cause" requirement for such revocation destroyed mutuality of obligation, thereby rendering the agreement void. In con-

---

[3]Both cases also predate the judicial interpretation of contracts as including an implied covenant of good faith and fair dealing. (See, e.g., *Brown* v. *Superior Court, supra,* 34 Cal.2d at p. 564; *Mattei* v. *Hopper, supra,* 51 Cal.2d at p. 124; *Rodriguez* v. *Barnett, supra,* 52 Cal.2d at p. 160.)

trast, the buyers here promised that their approval of various reports would not be "unreasonably withheld."

In *Larwin-Southern California, Inc. v. JGB Investment Co., supra,* 101 Cal.App.3d 626, 637, the "[d]efendants argue[d] that plaintiff's promise to purchase [was] illusory because it [was] conditioned by satisfaction clauses permitting plaintiff to perform or refuse to perform at its own unrestricted pleasure." The defendants contended that "the contract lack[ed] mutuality of obligation and [was] therefore unenforceable." (*Ibid.*) The court pointed out that the existence of a "satisfaction clause," requiring the buyer's approval of various reports, did not invalidate the contract since the buyer was under an implied duty to exercise his judgment in good faith. (*Id.,* at p. 639.) In the case before this court, the buyers *expressly* recognized that duty.

In light of the express and implied obligations to proceed in good faith, the buyers here had an enforceable obligation to proceed diligently with the recordation of the tract map and to obtain the city's approval to develop the property. Further, the validity of the liquidated damages clause does not necessarily affect the validity of the underlying contract.

■ The only real issue before this court is whether the presence of the liquidated damages clause affected the *remedy* to which the buyers were entitled. Thus, the court must decide whether the buyers were prevented from obtaining specific performance because the liquidated damages clause stated that the seller waived that remedy if the buyers failed to perform their duties.

For many years this view was adopted by the courts. One party to a contract could not obtain specific performance if that remedy was unavailable to the other party. (See, e.g., *Roy v. Pos* (1920) 183 Cal. 359, 364 [191 P. 542].) However, the Restatement of Contracts rejected this rule. "The fact that the remedy of specific enforcement is not available to one party is not a sufficient reason for refusing it to the other party." (Rest., Contracts, § 372, subd. (1). See also 7 Witkin, Summary of Cal. Law (8th ed. 1974) pp. 5274-5276.)

The comment to section 372 is instructive. "The substantial purpose of all attempted rules requiring mutuality of remedy is to make sure that the defendant will not be compelled to perform specifically without good security that he will receive specifically the agreed equivalent in

exchange." (Rest., Contracts, § 372, com. a on subd. (1), at p. 678.) Section 373 of the Restatement recognized that "[s]pecific enforcement may properly be refused if a substantial part of the agreed exchange for the performance to be compelled is as yet unperformed and its concurrent or future performance is not well secured to the satisfaction of the court."

In 1969, the California Legislature discarded the rigid and outdated requirement of mutuality of remedy with respect to specific performance. Civil Code section 3386 was amended to provide that "[n]otwithstanding that the agreed counterperformance is not or would not have been specifically enforceable, specific performance may be compelled if: [¶] (a) Specific performance would otherwise be an appropriate remedy; and [¶] (b) The agreed counterperformance has been substantially performed or its concurrent or future performance is assured or, if the court deems necessary, can be secured to the satisfaction of the court." (See Stats. 1969, ch. 156, § 1, p. 410.)[4]

Under existing precedent, a trial court may include terms in a decree which adjust the equities between the parties so as to bring about substantial justice. (See generally, *Ellison* v. *Ventura Port District* (1978) 80 Cal.App.3d 574, 583 [145 Cal.Rptr. 665].)[5] In this manner, the courts can ensure that counterperformance by a party seeking specific performance will be forthcoming.

In the present case, the seller contends that the trial court exceeded its jurisdiction when it "remade" the contract. However, this argument mischaracterizes what the trial court actually did. As entered, the judgment simply imposed a reasonable time limit of six months within which the buyers were to complete their performance under the agreement. This can scarcely be characterized as a rewriting of the contract.

---

[4]The California Law Revision Commission comment to section 3386 states that the 1969 amendment to the code section was based on sections 372, subdivision (1), and 373 of the Restatement of Contracts. (See Cal. Law Revision Com. com. to Civ. Code, § 3386, 12 West's Ann. Civ. Code (1970 ed.) p. 409.)

[5]The seller maintains that the filing of an action for specific performance cannot cure a lack of mutuality of obligation. (See *Kowal* v. *Day* (1971) 20 Cal.App.3d 720, 724-725 [98 Cal.Rptr. 118].) On the other hand, the buyers observe that by filing an action for specific performance they have submitted to the jurisdiction of the court. (See *Ellis* v. *Mihelis* (1963) 60 Cal.2d 206, 216 [32 Cal.Rptr. 415, 384 P.2d 7].) The two contentions do not really speak to each other. *Ellis* dealt with the requirement of mutuality of remedy before the 1969 amendment to Civil Code section 3386. As has been shown, there was mutuality of obligation in the present agreement.

The seller argues, without the benefit of any authority, that the trial court should have required the buyers to post security for their future performance in an amount equal to the cost of obtaining the necessary reports and the tract map. Unfortunately, the seller fails to demonstrate the necessity for such a requirement and ignores the fact that the trial court reserved jurisdiction to make supplemental orders.

In summary, the seller's waiver of her right to specific performance in the liquidated damages clause did not prevent the buyers from compelling the specific performance of this land sale agreement.[6]

Finally, the seller claims that this contract cannot be specifically enforced because it contravenes Civil Code section 3390, subdivision 4. The buyers were to obtain the approval by the City of Palm Desert of various development plans before the close of escrow. Civil Code section 3390 provides in part that "[t]he following obligations cannot be specifically enforced: ... [¶] 4. An agreement to procure the act or consent of the wife of the contracting party, or of any other third person ... ."

The seller contends that this section precludes specific performance since the agreement was for the buyers to obtain the city's consent to the proposed development of condominium units. She relies on cases such as *Casady* v. *Modern Metal etc. Mfg. Co.* (1961) 188 Cal.App.2d 728, 731 [10 Cal.Rptr. 790]; *Dworman* v. *Mayor & Bd. of Aldermen, etc., Morristown* (D.N.J. 1974) 370 F.Supp. 1056, 1077-1078; and *Popular Refreshments, Inc.* v. *Fuller's Milk Bar, Inc.* (1964) 85 N.J.Super. 528 [205 A.2d 445, 451].

However, this is not a case involving specific performance of a contract "to procure the ... consent of" the city within the meaning of Civil Code section 3390, subdivision 4. The buyers in the present case agreed that city approval of plans would be a condition precedent to the close of escrow. Section 3390, subdivision 4 does not prevent the specific performance of a land sales contract in which a city's approval of certain development plans is a condition precedent to completion of the agreement. (Cf. *Larwin-Southern California, Inc.* v. *JGB Investment*

---

[6]In view of this resolution of the specific performance issue, it is unnecessary to determine (1) whether the seller might be entitled to specific performance notwithstanding the presence of the liquidated damages clause (see Civ. Code, § 3389) or (2) whether she could bring a damage action to recover the cost of preparing reports and a tract map if they were not prepared.

*Co., supra,* 101 Cal.App.3d 626.) Clearly, section 3390 does not apply to the facts of this case.

## III.

This land sale contract does not lack mutuality of obligation. The buyers are under an express duty to proceed diligently and to refrain from unreasonably denying approval. They have an implied duty to proceed in good faith and to act fairly. The liquidated damages clause does not alter the fact that the buyers are entitled to specific performance by the seller so long as the buyers discharge their contractual duties.

The judgment of the trial court is affirmed.

Tobriner, J., Mosk, J., Richardson, J., Newman, J., Rattigan, J.,* and Blease, J.,* concurred.

Appellant's petition for a rehearing was denied May 20, 1980.

---

*Assigned by the Chairperson of the Judicial Council.