SEGAL, J., Dissenting.
*133 I agree an employee can impliedly accept an arbitration agreement by continuing to work for his or her employer. I also think an employee, like any other contracting party, can reject an arbitration agreement offered by an employer and yet continue to work for the employer. Whether an employer and an employee entered into an implied agreement regarding the terms of employment is a factual issue we routinely ask a trier of fact to decide in employment cases. Because the facts in this case do not support only one reasonable conclusion, I would defer to the trial court's resolution of that factual issue.
"The issue of an implied agreement or consent is ordinarily a factual question to be resolved by the trier of fact." ( Antelope Valley Groundwater Cases (2018) 30 Cal.App.5th 602, 618, fn. 11, 241 Cal.Rptr.3d 692 ; see *833 Foley v. Interactive Data Corp. (1988) 47 Cal.3d 654, 677, 254 Cal.Rptr. 211, 765 P.2d 373 [whether the parties' conduct created an implied agreement is generally a question of fact]; Citizens for Amending Proposition L v. City of Pomona (2018) 28 Cal.App.5th 1159, 1189, 239 Cal.Rptr.3d 750 ["The existence and scope of implied-in-fact contracts are determined by the totality of the circumstances. [Citation.] 'The question whether such an implied-in-fact agreement exists is a factual question for the trier of fact unless the undisputed facts can support only one reasonable conclusion.' "]; Unilab Corp. v. Angeles-IPA (2016) 244 Cal.App.4th 622, 636, 198 Cal.Rptr.3d 211 ["Whether an implied contract exists ' " 'is usually a question of fact for the trial court. Where evidence is conflicting, or where reasonable conflicting inferences may be drawn from evidence which is not in conflict, a question of fact is presented for decision of the trial court.' " ' "]; Kashmiri v. Regents of University of California (2007) 156 Cal.App.4th 809, 829, 67 Cal.Rptr.3d 635 ["the question whether the parties' conduct creates ... an implied agreement is generally " 'a question of fact" ' "].) In the arbitration context, while "California law permits employers to implement policies that may become unilateral implied-in-fact contracts when employees accept them by continuing their employment," whether "employment policies create unilateral contracts is 'a factual question in each case.' " ( Gorlach v. Sports Club Co. (2012) 209 Cal.App.4th 1497, 1508, 148 Cal.Rptr.3d 71, quoting Asmus v. Pacific Bell (2000) 23 Cal.4th 1, 11, 96 Cal.Rptr.2d 179, 999 P.2d 71.)
Because we are reviewing the trial court's resolution of a factual issue, I would not apply, as the majority does, a de novo standard of review. Indeed, I would not even apply a substantial evidence standard of review. I think the standard of review is much more onerous on the appellant in this case.
As the majority acknowledges, Sohnen had the burden of proving the existence of the implied arbitration agreement. (Maj. opn.
*134 at p. 830; see Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC (2012) 55 Cal.4th 223, 236, 145 Cal.Rptr.3d 514, 282 P.3d 1217 ["[t]he party seeking arbitration bears the burden of proving the existence of an arbitration agreement"]; Cohen v. TNP 2008 Participating Notes Program, LLC (2019) 31 Cal.App.5th 840, 859, 243 Cal.Rptr.3d 340 [same].) The trial court found Sohnen failed to meet its burden. In this situation, we do not review the record to determine whether substantial evidence supports the trial court's finding, but whether the evidence compels the opposite finding as a matter of law. Thus, where the trier of fact, here the trial court ruling on a motion to compel arbitration, " 'expressly or implicitly concluded that the party with the burden of proof did not carry the burden and that party appeals, it is misleading to characterize the failure-of-proof issue as whether substantial evidence supports the judgment. ... [¶] [W]here the issue on appeal turns on a failure of proof at trial, the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law. [Citations.] Specifically, the question becomes whether the appellant's evidence was (1) "uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding." ' " ( Dreyer's Grand Ice Cream, Inc. v. County of Kern (2013) 218 Cal.App.4th 828, 838, 159 Cal.Rptr.3d 832 ; accord, Glovis America, Inc. v. County of Ventura (2018) 28 Cal.App.5th 62, 71, 238 Cal.Rptr.3d 895 ; Atkins v. City of Los Angeles (2017) 8 Cal.App.5th 696, 734, 214 Cal.Rptr.3d 113.) For this reason, " '[w]here, as here, the judgment is against *834 the party who has the burden of proof, it is almost impossible for him to prevail on appeal by arguing the evidence compels a judgment in his favor. That is because unless the trial court makes specific findings of fact in favor of the losing plaintiff, we presume the trial court found the plaintiff's evidence lacks sufficient weight and credibility to carry the burden of proof. [Citations.] We have no power on appeal to judge the credibility of witnesses or to reweigh the evidence.' " ( Patricia A. Murray Dental Corp. v. Dentsply Internat., Inc. (2018) 19 Cal.App.5th 258, 270, 227 Cal.Rptr.3d 862.)
The evidence does not compel a finding Diaz and Sohnen impliedly agreed to arbitrate. The evidence shows Diaz attended a meeting on December 2, 2016, where Marla Carr, Sohnen's chief operating officer, and Eliana Diaz, an employee in the human resources department, announced the company was implementing a new arbitration policy. Carr and Eliana Diaz gave the employees copies of the new dispute resolution agreement, "in English and Spanish, to take home and review." Eliana Diaz and Carr, however, had different recollections of the chronology of events. Eliana Diaz did not state in her declaration that employees were told on December 2, 2016 that, even if they refused to sign the arbitration agreement, continuing to work at the company would constitute acceptance of the agreement. Eliana *135 Diaz stated it was not until December 19, 2016 that, during a private meeting with Diaz, she read Diaz a document stating, "If you continue working for Sohnen Enterprises on or after December 20, 2016, your actions will be viewed just as if you signed the [arbitration agreement]." Eliana Diaz also stated in her declaration that, in the meantime, Diaz told her on December 14, 2016 she would not sign the arbitration agreement. Eliana Diaz also said that on December 23, 2016 Sohnen received a letter from Diaz's attorney dated December 20, 2016 again rejecting the arbitration agreement. The letter from counsel for Diaz stated: "This letter will serve as a formal response [to], and rejection of, the attempt at obtaining Ms. Erika Diaz'[s] agreement to forced arbitration as set forth in an agreement presented to her on, or about, 12-2-16." The letter also stated that Diaz "intends to, and will continue, with [sic ] her employment by Sohnen Enterprises on all the terms, and conditions, of her employment in effect prior to the presentation to her of the [arbitration agreement]."
On the other hand, Carr stated in her declaration that at the December 2, 2016 meeting she "explained in English the basic terms of the [arbitration agreement]" and "[s]pecifically" told the employees that "continued employment would constitute acceptance" of the agreement. The documentary evidence, however, does not support this statement in her declaration. The memorandum advising Diaz that Sohnen would consider continued employment as acceptance is dated December 19, not December 2. In addition, the December 19 memorandum suggests that it was the first time the company had made this statement and that Diaz had until the next day to decide (presumably demonstrated by continuing to work, because Diaz had already said she was not going to sign the arbitration agreement) whether she would agree to the arbitration provision. The document states: "This memo is to inform you that if you continue working for Sohnen Enterprises on or after December 20, 2016, you will be deemed for all purposes to have accepted the terms of the [arbitration agreement]." (Italics added.) Counsel for Diaz wrote his letter the next day.
This evidence created factual disputes and supported different reasonable conclusions about what happened and whether Diaz impliedly agreed to Sohnen's proposed *835 arbitration agreement. The trial court resolved this conflict in favor of Diaz and ruled the parties did not reach an implied agreement to arbitrate. The court stated, "You can't have an agreement where one side says, 'This is the deal,' and the other side says, 'No, this is not the deal,' " and the court found "there [was] no meeting of the minds." We do not have the authority to reweigh the evidence and come to a different conclusion, let alone conclude the evidence compels a finding the parties did enter into an implied agreement. *136 There was also a conflict in the evidence concerning whether the employees needed to sign the arbitration agreement in order to accept it. The arbitration agreement stated it had to be accepted in writing: "[B]y my signature below ... I agree to comply with and be bound by this Agreement." But Carr stated she told the employees they could accept the arbitration agreement, even if they did not sign it, by continuing to work there. Which was it? Again, the trial court resolved this conflict against Sohnen and found Diaz did not accept the agreement, a finding we should respect on appeal. (See Guz v. Bechtel National, Inc. (2000) 24 Cal.4th 317, 337, 100 Cal.Rptr.2d 352, 8 P.3d 1089 ["Where there is no express agreement, the issue is whether other evidence of the parties' conduct has a 'tendency in reason' ( Evid. Code, § 210 ) to demonstrate the existence of an actual mutual understanding on particular terms and conditions of employment. If such evidence logically permits conflicting inferences, a question of fact is presented."].) The trial court's ruling was also consistent with California cases holding that courts will not imply an employee's consent to an arbitration agreement where the agreement requires the employee's signature to be effective. (See Gorlach v. Sports Club Co. , supra , 209 Cal.App.4th at p. 1509, 148 Cal.Rptr.3d 71 [court would not "imply the existence of [an arbitration] agreement" where "the handbook told employees that they must sign the arbitration agreement, implying that it was not effective until (and unless) they did so," and the employee "never signed the arbitration agreement"]; Mitri v. Arnel Management Co. (2007) 157 Cal.App.4th 1164, 1172-1173, 69 Cal.Rptr.3d 223 [no implied agreement to arbitrate where the agreement's "express term requir[ed] a signed agreement"].)
None of the cases the majority or Sohnen cites involved a plaintiff who expressly rejected the arbitration agreement, as Diaz did here twice (once orally and once in writing). (See Scott v. Education Management Corporation (3d Cir. 2016) 662 Fed.Appx. 126, 130-131 [continuing to work did not constitute an implied agreement to an arbitration provision where the employees "promptly voiced their specific objection to and rejection of the ADR policy" and, "[r]ather than indicate their assent, both men quite clearly expressed their strong disagreement with its terms"]; Bayer v. Neiman Marcus Holdings, Inc. (N.D.Cal. Nov. 8, 2011, No. CV 11-3705 MEJ), 2011 WL 5416173, at p. 5 [employee did not impliedly agree to an arbitration agreement where the employee refused to sign the arbitration agreement and told his supervisors he was not agreeing to the employer's arbitration program]; Kunzie v. Jack-In-The-Box, Inc. (Mo.Ct.App. 2010) 330 S.W.3d 476, 486 [employee's "rejection [of an arbitration agreement] and continued employment, under basic contract principles, reasonably could be viewed as [the employee's] counteroffer to [the employer] that [the employee] would continue his employment without being subject to [the employer's] arbitration policy," and the employer's "failure to then terminate [the employee's]
*137 employment could be deemed to constitute an acceptance of such *836 counter-offer"].) Presented with evidence of those two express rejections and, at most, 18 days (December 2 to December 20, 2016) of continued employment, the trial court was entirely justified in giving the former more weight than the latter, and we should defer to that finding. (See Haworth v. Superior Court (2010) 50 Cal.4th 372, 385, 112 Cal.Rptr.3d 853, 235 P.3d 152 [trial courts "generally are in a better position to evaluate and weigh the evidence"]; Tucker v. Pacific Bell Mobile Services (2010) 186 Cal.App.4th 1548, 1562, 115 Cal.Rptr.3d 9 [" '[i]t is the exclusive function of the trial court to weigh the evidence, resolve conflicts and determine the credibility of witnesses' "]; see also Haraguchi v. Superior Court (2008) 43 Cal.4th 706, 711, fn. 3, 76 Cal.Rptr.3d 250, 182 P.3d 579 ["that the trial court's findings were based on declarations and other written evidence does not lessen the deference due those findings"]; Ramos v. HomewardResidential, Inc. (2014) 223 Cal.App.4th 1434, 1441, 168 Cal.Rptr.3d 114 ["we defer to factual determinations made by the trial court when the evidence is in conflict, whether the evidence consists of oral testimony or declarations"]; Poniktera v. Seiler (2010) 181 Cal.App.4th 121, 130, 104 Cal.Rptr.3d 291 ["we resolve all conflicts in favor of the judgment, even when (as here) the trial court's decision is based on evidence received by declaration rather than by oral testimony"].)
The cases the majority cites are also factually distinguishable. Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC, supra , 55 Cal.4th 223, 145 Cal.Rptr.3d 514, 282 P.3d 1217 did not involve an implied agreement to arbitrate, by conduct or otherwise. In that case there was a written arbitration agreement in the applicable CC&Rs. ( Id. at p. 231, 145 Cal.Rptr.3d 514, 282 P.3d 1217.) The court in Craig v. Brown & Root, Inc. (2000) 84 Cal.App.4th 416, 100 Cal.Rptr.2d 818 held the employee's continued employment constituted acceptance of an arbitration agreement her employer had proposed. ( Id. at pp. 420-421, 100 Cal.Rptr.2d 818.) But the employee in that case continued to work at the company for four years ( id. at pp. 418, 421, 100 Cal.Rptr.2d 818 ), without ever saying a word about the arbitration agreement, whereas Diaz continued to work at Sohnen one day or 18 days and expressly rejected the arbitration agreement twice. And in Harris v. TAP Worldwide, LLC (2016) 248 Cal.App.4th 373, 203 Cal.Rptr.3d 522 the employer gave the employee the arbitration agreement when the employee began working full time, and the employee worked at the company for at least a year (and perhaps three)[1] before the company terminated his employment. (See id. at pp. 376-377, 203 Cal.Rptr.3d 522.) Again, a far cry from the (at most) 18 days Diaz continued to work at Sohnen before she rejected the agreement in writing.
*138 Neither Schachter v. Citigroup, Inc. (2009) 47 Cal.4th 610, 101 Cal.Rptr.3d 2, 218 P.3d 262 nor DiGiacinto v. Ameriko-Omserv Corp. (1997) 59 Cal.App.4th 629, 69 Cal.Rptr.2d 300, both cited by the majority, involved an arbitration agreement, express or implied. (See Gorlach v. Sports Club Co. , supra , 209 Cal.App.4th at p. 1510, 148 Cal.Rptr.3d 71 [" ' DiGiacinto v. Ameriko-Omserv Corp. [did not] address[ ]
*837 whether an arbitration agreement existed between an employer and employee' "]; Mitri v. Arnel Management Co. , supra , 157 Cal.App.4th at p. 1171, 69 Cal.Rptr.3d 223 [same].) Certainly, as the majority points out (maj. opn. at p. 831), "California law permits employers to implement policies that may become unilateral implied-in-fact contracts when employees accept them by continuing their employment." ( Asmus v. Pacific Bell , supra , 23 Cal.4th at p. 11, 96 Cal.Rptr.2d 179, 999 P.2d 71.) But here the evidence was disputed whether Sohnen made such a unilateral change in the terms of Diaz's employment. There was some evidence Sohnen intended to implement arbitration unilaterally, which Diaz could accept by continued employment, but there was also evidence Sohnen intended to implement arbitration as part of a bilateral agreement, which, as stated, Diaz could accept by signing the agreement. Indeed, the language of the arbitration agreement suggested that the parties were intending to exchange mutual promises, not that Sohnen was implementing arbitration unilaterally. The arbitration agreement states, "By this Agreement, you and Sohnen Enterprises ... agree to resolve by arbitration any and all disputes arising out of or related to your employment by [Sohnen]." (Italics added.) The agreement also states, "By mutually agreeing to arbitrate covered disputes, we both recognize that these disputes will not be resolved by a court or jury." (Italics added.) (See Bleecher v. Conte (1981) 29 Cal.3d 345, 350, 213 Cal.Rptr. 852, 698 P.2d 1154 ["[a] bilateral contract is one in which there are mutual promises given in consideration of each other"].) The trial court again resolved these factual issues in favor of Diaz. (See Asmus , at p. 11, 96 Cal.Rptr.2d 179, 999 P.2d 71 ["whether employment policies create unilateral contracts will be a factual question in each case"]; Davis v. Jacoby (1934) 1 Cal.2d 370, 378, 34 P.2d 1026 [in many cases, "whether the particular offer is one to enter into a bilateral or unilateral contract" depends on "the intent of the offerer and the facts and circumstances of the case"].)
Finally, I believe that courts, not employers, should determine whether there is an implied agreement to arbitrate. That the employer told its employees continued employment would constitute acceptance, or that the employer gave the employee a reasonable period of time to consider whether to sign an arbitration agreement, is evidence that may support a finding the parties entered into an implied agreement. But it is not the only evidence a trier of fact can consider. The majority's decision takes from courts the power to determine whether (the party seeking to compel arbitration has met its burden of proving) the evidence shows an implied agreement to arbitrate, because the decision gives employers the unilateral power to create an *139 implied agreement simply by announcing that continued employment will constitute acceptance, no matter how strongly or clearly the employee manifests his or her rejection of the proposed agreement. Carr's memorandum stated that continuing to work for Sohnen would "be viewed" as acceptance. The issue for me is, "viewed" by whom? I believe the "viewer" should be the court, not the employer.
Because in my opinion the majority applies the wrong standard of review and does not give sufficient deference to the trial court's resolution of the factual issues in this case, I respectfully dissent.

The defendant in Harris terminated the plaintiff's employment in December 2013. (Harris v. TAP Worldwide, LLC , supra , 248 Cal.App.4th at p. 376, 203 Cal.Rptr.3d 522.) The new arbitration policy went into effect in January 2010. (Id. at p. 379, 203 Cal.Rptr.3d 522.) The plaintiff stated he signed the acknowledgement of receipt of the documents containing the arbitration provision in September 2012, "but the year was erroneously listed as 2010." (Id. at p. 377, 203 Cal.Rptr.3d 522.)