Filed 11/16/22  Ramirez v. Real Time Staffing Services CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| MARIA RAMIREZ,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>REAL TIME STAFFING SERVICES, LLC et al.,<br><br>    Defendants and Respondents. | B313232<br><br>(Los Angeles County Super. Ct. No. BC715058) |

APPEAL from an order of the Superior Court of Los Angeles County, Daniel J. Buckley, Judge.  Affirmed.

Gutierrez Law Group, Rolando Gutierrez; Matthew J. Kita; Arias Sanguinetti Wang & Torrijos, Mike Arias, Craig S. Momita and Robert M. Partain for Plaintiff and Appellant.

CDF Labor Law, David G. Hagopian, Robyn E. Frick and Jeffrey Sikkema for Real Time Staffing Services, LLC.

Krieger & Krieger and Lawrence R. Cagney for Defendant and Respondent Cosway Company, Inc.

_____

Maria Ramirez filed a putative class action lawsuit against Real Time Staffing Services, LLC[1] and Cosway Company, Inc., alleging violations of Labor Code wage-and-hour provisions and a cause of action for unfair business practices.  The trial court granted Real Time and Cosway's motion to compel Ramirez to arbitrate her individual claims, dismissed the class allegations without prejudice and stayed the superior court proceedings pending resolution of arbitration.

On appeal (under the death knell doctrine) Ramirez argues the arbitration agreement signed by Ramirez as part of her application for employment is unenforceable for lack of consideration and the court erred in dismissing the class allegations because the arbitration agreement, concededly governed by the Federal Arbitration Act (FAA) (9 U.S.C. § 1 et seq.), contained no class action waiver.  We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

Ramirez applied for employment with Real Time, a staffing agency, on January 24, 2012.  Real Time placed Ramirez with Cosway, a manufacturer of personal care products for nationwide distribution, in September 2012, where Ramirez worked on the production line until September 2015.

_____

[1]     Ramirez's complaint named as defendants both Real Time Staffing Services, Inc. and Real Time Staffing Services, LLC. Real Time converted from a corporation to a limited liability company on May 12, 2014, more than four years before Ramirez filed her initial complaint.

Ramirez filed her initial complaint on July 24, 2018 and on December 7, 2018 the operative first amended complaint, alleging wage-and-hour causes of action against Real Time and Cosway, as her joint employers, for failure to pay overtime and double time compensation, to provide meal and rest periods and to provide accurate itemized wage statements and also alleging causes of action for Labor Code waiting time penalties and unfair competition and unlawful business practices. Ramirez asserted her claims as an individual and on behalf of a class consisting of all current and former nonexempt employees who worked or had worked for Real Time or Cosway at any time from July 23, 2014 to the present.

1. *The Motion To Compel Arbitration*

Real Time and Cosway on August 31, 2020 moved to compel arbitration of Ramirez's individual claims, to dismiss the putative class claims and to stay the action pending arbitration. In their motion they argued Ramirez agreed to arbitrate all of her employment claims with Real Time and, through agency principles, with Cosway when she applied for employment in January 2012. The arbitration agreement, they asserted, was covered by the FAA, as expressly recited in the agreement and by virtue of Cosway's national distribution of the products it manufactured and was neither substantively nor procedurally unconscionable. They also argued under well-established case law concerning the FAA, an employer cannot be compelled to arbitrate claims on a classwide basis absent an express agreement to do so, citing, among other cases, *Lamps Plus, Inc. v. Varela* (2019) 587 U.S. ___ [139 S.Ct. 1407, 1412, 1417-1419], which held that a court may not compel class arbitration when the arbitration agreement does not expressly provide for such

3

arbitration and that ambiguity does not constitute consent to arbitrate class claims.

The Mutual Arbitration Agreement (Acuerdo Mutuo Para Arbitrar) initialed and signed by Ramirez stated, translated from Ramirez's Spanish-language form, "In the event the Employer and I are unable to informally resolve any dispute, I agree for the dispute to be filed and settled by final and binding arbitration in accordance with the procedures of the Federal Arbitration Act and the California Arbitration Act (California Civil Procedure Code Sec. 1280, et seq.), including section 1283.05 and discovery rights. Such disputes may include but are not limited to any breach of contract, fraud, misrepresentation, defamation, personal damages, salary, wrongful termination, vacation pay, sick pay, overtime pay, implied federal and state employment rules, . . . [and] state laws regarding unfair competition or unfair business practices . . . . I agree to have the arbitration held in Santa Barbara, CA."[2]

---

[2]    Real Time's associate policy handbook, which Ramirez acknowledged receiving, also contained an agreement to arbitrate "any dispute between the Employer and I relating to or arising out of, or related to my employment or termination of my employment." The arbitration provision in the handbook also contained a purported express waiver of the employee's "right to bring or join any type of collective or class claim in arbitration, in any court, or in any other forum." Real Time and Cosway did not base their motion to compel arbitration on the provision in the handbook and advised the trial court they were relying solely on the separate Mutual Arbitration Agreement initialed and signed by Ramirez as part of her employment application, explaining, "The handbook merely serves as a reminder that Plaintiff was aware of her agreement to arbitrate with Real Time."

4

### 2. *Ramirez's Opposition to the Motion*

In her opposition to the motion to compel arbitration and dismiss class claims, Ramirez argued no valid arbitration agreement had been formed because the parties to be bound by the agreement could not be identified (the "Employer" purportedly subject to the agreement was not specified) and because the agreement lacked consideration (the promise to arbitrate was not mutual). As to the second point, Ramirez emphasized that, although the heading referred to a mutual agreement to arbitrate, the provision itself only stated, "I agree."

Ramirez also argued the agreement was unconscionable and, therefore, unenforceable. She again identified ambiguity and lack of mutuality as grounds for finding substantive unconscionability; contended Santa Barbara was an unreasonable forum; and asserted, as establishing procedural unconscionability, she had been denied any meaningful opportunity to review the arbitration agreement before being pressured to complete her application and sign the documents she had been handed.

Ramirez's opposition memorandum did not address Real Time and Cosway's argument that her claims on behalf of current and former employees could not be arbitrated.

### 3. *The Order Granting the Motion*

After taking the matter under submission following receipt of a reply memorandum from Real Time and Cosway and oral argument from the parties, the trial court on April 7, 2021 granted the motion to compel arbitration after severing the provision requiring the arbitration to take place in Santa Barbara. (Real Time and Cosway had conceded in their reply memorandum that they were willing to arbitrate in the greater

5

Los Angeles area.)  Citing *AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. 333, 346-348, but without further discussion in its minute order, the court struck the class allegations.  Pursuant to Code of Civil Procedure section 1281.4 the court stayed the case pending resolution of arbitration.  At the request of Ramirez, the court subsequently clarified that its order striking the class allegations was without prejudice.[3]

> 4. *Ramirez's Death Knell Appeal*

Ramirez filed a notice of appeal within 60 days of the court's April 7, 2021 ruling.  Real Time moved to dismiss the appeal, joined by Cosway, arguing an order compelling arbitration is nonappealable.  Ramirez filed an opposition, contending the order striking the class allegations was immediately appealable under the death knell doctrine and the simultaneously issued and closely related order compelling arbitration was, as a consequence, appealable as well, citing several cases for that proposition, including *Franco v. Athens Disposal Co., Inc.* (2009) 171 Cal.App.4th 1277, 1288 (an order to arbitrate individual claims is appealable if it constitutes the "death knell" for class litigation).  (But see *Nixon v. AmeriHome Mortgage Co., LLC* (2021) 67 Cal.App.5th 934, 943 ["[i]t is far from certain whether the judicially created death knell exception to the one final judgment rule for an order dismissing class

---

[3]      In an April 28, 2021 message to counsel on caseanywhere.com under the title "tomorrow's status conference," the trial judge stated, "In your joint statement, you asked if the ruling to strike the class action allegations is with or without prejudice.  It is without prejudice.  We can discuss tomorrow." The record on appeal does not include any order or reporter's transcript from a status conference on April 29, 2021.

claims extends to make appealable an otherwise nonappealable order compelling arbitration when the two orders are issued simultaneously"].)  We denied the motion to dismiss.[4]

## DISCUSSION

1. *Governing Law and Standard of Review*

Code of Civil Procedure section 1281.2 requires the superior court to order arbitration of a controversy "[o]n petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party to the agreement refuses to arbitrate such controversy . . . if it determines that an agreement to arbitrate the controversy exists."  As the language of this section makes plain, the threshold question presented by every petition to compel arbitration is whether an agreement to arbitrate exists. (*American Express Co. v. Italian Colors Restaurant* (2013) 570 U.S. 228 [it is an "overarching principle that arbitration is a matter of contract"]; *Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 236 (*Pinnacle*) ["""a party cannot be required to submit to arbitration any dispute which he [or she] has not agreed so to submit"""]; *Gordon v. Atria Management Co., LLC* (2021) 70 Cal.App.5th 1020, 1026 ["California has a strong public policy in favor of arbitration, but '"a party cannot be compelled to arbitrate a dispute that [he or she] has not agreed to resolve by arbitration"'"].)

---

[4]     Real Time in its respondent's brief stated it did not challenge appealability based on the death knell doctrine, and Cosway joined in that brief.

The party seeking to compel arbitration bears the burden of proving by a preponderance of the evidence an agreement to arbitrate a dispute exists. (*Pinnacle, supra*, 55 Cal.4th at p. 236; *Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 413; *Nixon v. AmeriHome Mortgage Co., LLC*, *supra*, 67 Cal.App.5th at p. 946.) To carry this burden of persuasion the moving party must first produce "prima facie evidence of a written agreement to arbitrate the controversy." (*Rosenthal,* at p. 413; accord, *Gamboa v. Northeast Community Clinic* (2021) 72 Cal.App.5th 158, 165 (*Gamboa*).) "If the moving party meets its initial prima facie burden and the opposing party disputes the agreement, then . . . the opposing party bears the burden of producing evidence to challenge the authenticity of the agreement." (*Gamboa*, at p. 165; accord, *Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 972; *Rosenthal*, at p. 413.) If the opposing party produces such evidence, then "the moving party must establish with admissible evidence a valid arbitration agreement between the parties." (*Gamboa,* at p. 165.) "Despite the shifting burden of production, '[t]he burden of proving the agreement by a preponderance of the evidence remains with the moving party.'" (*Trinity v. Life Ins. Co. of North America* (2022) 78 Cal.App.5th 1111, 1120 (*Trinity*); see *Rosenthal*, at p. 413.)

Absent conflicting evidence, we review de novo the trial court's interpretation of an arbitration agreement. (*Rosenthal v. Great Western Fin. Securities Corp., supra,* 14 Cal.4th at p. 413; *Trinity, supra,* 78 Cal.App.5th at p. 1120; *Nyulassy v. Lockheed Martin Corp.* (2004) 120 Cal.App.4th 1267, 1277.) Where the trial court's ruling is based on a finding of fact, we review the decision for substantial evidence. (*Gamboa, supra,*

8

72 Cal.App.5th at p. 166; *Fabian v. Renovate America, Inc.* (2019) 42 Cal.App.5th 1062, 1066.) Under this deferential standard, "'all factual matters will be viewed most favorably to the prevailing party [citations] and in support of the judgment.'" (*Campbell v. Southern Pacific Co.* (1978) 22 Cal.3d 51, 60; accord, *Western States Petroleum Assn. v. Superior Court* (1995) 9 Cal.4th 559, 571; see *Nissan Motor Acceptance Cases* (2021) 63 Cal.App.5th 793, 818 ["We must not review the evidence to determine whether substantial evidence supports the losing party's version of the evidence. Instead, we must determine if there is any substantial evidence, contradicted or uncontradicted, to support the trial court's findings"].)

> 2. *Adequate Consideration Supports the Mutual Arbitration Agreement*

Abandoning the arguments concerning unconscionability she advanced in the trial court, Ramirez on appeal contends only that the Mutual Arbitration Agreement is unenforceable because it lacked consideration. In support of this argument, emphasizing the agreement states "I agree," rather than "we agree," and was not signed on behalf of "Employer," Ramirez asserts Real Time did not promise to arbitrate disputes and, accordingly, there was no mutuality of obligation necessary to constitute valid consideration. (See, e.g., *Bleecher v. Conte* (1981) 29 Cal.3d 345, 350 ["A bilateral contract is one in which there are mutual promises given in consideration of each other. [Citations.] The promises of each party must be legally binding in order for them to be deemed consideration for each other"]; *Chicago Title Ins. Co. v. AMZ Ins. Services, Inc.* (2010) 188 Cal.App.4th 401, 421-422 ["'[a]n agreement is illusory and

9

there is no valid contract when one of the parties assumes no obligation"'].)

Ramirez's argument is fundamentally flawed. As Ramirez explained in her declaration in opposition to the motion to compel arbitration, she initialed and signed the Spanish-language version of the Mutual Arbitration Agreement as part of the employment application package with Real Time: "After completing the initial application, I was directed to a young lady's desk to initial and sign a packet of forms. . . . [¶] . . . When I inquired about the forms, this young lady only instructed me that I needed to sign them before I can begin working. While sitting at her desk, this young lady indicated on the forms where I had to initial and sign." That is, in return for Ramirez agreeing to arbitrate employment-related disputes, Real Time offered her a job. Whether or not Real Time also agreed to arbitrate disputes with Ramirez, the offer of employment, which Ramirez accepted, was adequate consideration for Ramirez's promise to do so. (Civ. Code, § 1605 ["[a]ny benefit conferred, or agreed to be conferred, upon the promisor, by any other person, to which the promisor is not lawfully entitled . . . is a good consideration for a promise"]; cf. *Asmus v. Pacific Bell* (2000) 23 Cal.4th 1, 14 [offer of continuing employment provides consideration for modification of the conditions of employment]; *Harris v. TAP Worldwide, LLC* (2016) 248 Cal.App.4th 373, 384 ["[p]laintiff cannot have it both ways, acceptance of the at-will job offer with all its emoluments and no responsibility to abide by one of its express conditions"].)

To be sure, if the Mutual Arbitration Agreement, despite its title, actually created only a unilateral obligation requiring Ramirez, but not Real Time, to arbitrate employment-related

10

disputes, that lack of mutuality, together with the arguably adhesive nature of the agreement as described by Ramirez, would be factors in determining whether the agreement to arbitrate was unenforceable as procedurally and substantively unconscionable. (See generally *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 120 ["an arbitration agreement imposed in an adhesive context lacks basic fairness and mutuality if it requires one contracting party, but not the other, to arbitrate all claims arising out of the same transaction or occurrence or series of transactions or occurrences"].) But Ramirez on appeal expressly disclaimed any challenge to the arbitration agreement as unconscionable and even purported to distinguish cases addressing mutuality and "I agree" language in arbitration agreements, including this court's decision in *Roman v. Superior Court* (2009) 172 Cal.App.4th 1462 (*Roman*), as inapposite because they addressed the issue of unconscionability, not consideration.

In any event, the Mutual Arbitration Agreement, as its title denoted, was bilateral notwithstanding its use of the "I agree" language emphasized by Ramirez. We considered a similar issue in *Roman*, *supra*, 172 Cal.App.4th 1462, which the trial court cited for our holding that the use of "I hereby agree" did not vitiate an otherwise bilateral obligation to arbitrate "'all disputes and claims that might arise out of my employment.'" (*Id.* at pp. 1466-1467, 1471.) We held in *Roman* the "I hereby agree" language at most created an ambiguity that, under ordinary rules of contract interpretation and in light of the public policy favoring arbitration and the agreement's explicit reference to mandatory arbitration of "all disputes," was best understood to mean that both parties were bound to arbitrate any disputes.

11

(*Id.* at pp. 1472-1473; see *McManus v. CIBC World Markets Corp.* (2003) 109 Cal.App.4th 76, 100 [agreement to arbitrate "'[a]ll disputes arising out of your employment'" created mutual obligation to arbitrate].)

Like the arbitration agreement in *Roman*, and unlike the agreement in *Serpa v. California Surety Investigations, Inc.* (2013) 215 Cal.App.4th 695, 705, which on its face required the employee to submit to arbitration "any such dispute[s]" involving her employment without imposing a similar obligation on the employer,[5] the agreement initialed and signed by Ramirez required arbitration of "any dispute" and specifically included within the scope of arbitration claims for breach of contract, fraud and defamation—causes of action that could be pursued by Real Time, as well as one of its employees.

Moreover, we properly look to the circumstances under which an agreement was made when interpreting it. (Civ. Code, § 1647.) Here, not only was the agreement to arbitrate captioned "Mutual" ("Mutuo"), but also the associate policy handbook made available to Ramirez and which she acknowledged receiving on the same day she applied for employment, although not incorporated by reference and not claimed by Real Time and Cosway to be an enforceable agreement to arbitrate, included a

---

[5] Despite the use of "any such" rather than simply "any" or "all" in the arbitration agreement at issue in *Serpa,* we concluded the agreement was bilateral because it incorporated the arbitration policy in the employee handbook, which "establish[ed] an unmistakable mutual obligation on the part of [the employer] and [the employee] to arbitrate 'any dispute' arising out of her employment." (*Serpa v. California Surety Investigations, Inc.*, *supra*, 215 Cal.App.4th at p. 705.)

12

provision that expressly stated "the Employer and I agree" to submit any employment-related dispute to arbitration. Under these circumstances there can be no question the Mutual Arbitration Agreement was intended to be, and was in fact, mutual.

    3. *The Trial Court Properly Exercised Its Discretion in Dismissing the Class Allegations*

The Mutual Arbitration Agreement did not address class actions. There was neither a class action waiver, express or implied (that is, the agreement did not state employees must arbitrate their claims on an individual basis)[6] nor consent to arbitrate classwide claims. In light of this silence, the trial court properly agreed with Real Time and Cosway that, under the FAA, Ramirez's claims on behalf of a putative class of current and former employees were not subject to arbitration. (*Lamps Plus, Inc. v. Varela, supra*, 139 S.Ct. at p. 1412 ["a court may not compel arbitration on a classwide basis when an agreement is 'silent' on the availability of such arbitration"]; accord, *Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.* (2010) 559 U.S. 662, 684; see also *Lamps Plus*, at p. 1419 ["courts may not infer from an ambiguous agreement that parties have consented to arbitrate on a classwide basis"].)

Ramirez does not challenge this aspect of the trial court's April 7, 2021 order. Rather, asserting that she never entered an enforceable class action waiver (a point Real Time and Cosway do not contest), Ramirez contends the court erred in striking her

---

[6]     As noted, the arbitration provision in Real Time's associate policy handbook waived the employee's right to bring "any type of collective or class claim" in any forum. (See fn. 2.)

class claims "without analysis" and urges us to remand those claims for a trial on the merits.

Ramirez's argument fails to mention that the trial court's order striking the class allegations was "without prejudice." Because the court has retained jurisdiction over the action, staying it pending resolution of the arbitration (Code Civ. Proc., § 1281.4), once arbitration has been completed, Ramirez will be free to file a new pleading reasserting any putative class claims, assuming Ramirez can still allege in good faith, as she did in her first amended complaint, that she will fairly and adequately protect the interest of the class she seeks to represent. Requiring that the case progress in this manner was well within the trial court's broad discretion to control the order of proceedings. (See Code Civ. Proc., § 128, subd. (a)(3); *Little v. Pullman* (2013) 219 Cal.App.4th 558, 570 ["[i]t is beyond dispute that the court may control its processes so as to most efficiently and effectively safeguard judicial economy and administer substantial justice"]; see also *Natkin v. California Unemployment Ins. Appeals Bd.* (2013) 219 Cal.App.4th 997, 1012.)

## DISPOSITION

The order compelling arbitration and dismissing the class allegations in Ramirez's first amended complaint is affirmed. Real Time and Cosway are to recover their costs on appeal.


PERLUSS, P. J.

We concur:


SEGAL, J.          FEUER, J.

14